IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DORINDA ORTEGA, on behalf of ERICA RAEL,
her minor child,

      Plaintiff,

  -vs-                                                      No. CIV 04-1385 LH/WDS

POJOAQUE PUBLIC SCHOOLS BOARD OF
EDUCATION; PAULA SANCHEZ, PRESIDENT;
RUBEN ROYBAL, VICE-PRESIDENT; HARRY
MONTOYA, SECRETARY; LILLY MAE ORTIZ,
MEMBER; DAVID ORTIZ, MEMBER; ARTHUR
BLEA, SUPERINTENDENT, POJOAQUE
PUBLIC SCHOOLS; MICHAEL CHAVEZ,
PRINCIPAL, POJOAQUE HIGH SCHOOL, (both
individually and his official capacity); VINCENT
NASCA, HEAD SECURITY, POJOAQUE HIGH
SCHOOL, (both individually and his official
capacity); ELLA LUJAN, SECRETARY,
POJOAQUE HIGH SCHOOL, (both individually
and in her official capacity),

      Defendants.

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment (Docket No. 20), filed August 1, 2005. The Court, having considered the Motion, the memoranda of the parties, and the applicable law, and otherwise being fully advised, finds Defendants' Motion is well taken and will be **granted**.

Plaintiff Dorinda Ortega, on behalf of her daughter Erica Rael, then a minor,[1] filed her Complaint for Violation of Civil Rights and Torts Violations in the First Judicial District Court of the State of New Mexico on November 5, 2004, bringing the following causes of action: Violation of Civil Rights, Assault and Battery, Prima Facie Tort, Intentional Infliction of Emotional Distress, Negligence, Failure to Train and Supervise, and False Imprisonment. Defendants removed this matter to the United States District Court for the District of New Mexico. In their Motion for Summary Judgment, Defendants contend that Officer Nasca and Principal Chavez did not violate Erica's Fourth Amendment or Fourteenth Amendment substantive due process rights, that Defendants Nasca and Chavez are entitled to qualified immunity, and that governmental immunity is not waived by the New Mexico Tort Claims Act.

There is no dispute among the parties regarding the material facts underlying Defendant's Motion for Summary.[2] On November 8, 2002, Erica was a fifteen-year-old student at Pojoaque High School. Before school that morning, a teacher caught Erica and her boyfriend, Juan Grant, smoking marijuana behind the school gymnasium. Both students ran, leaving their backpacks behind. Erica

---

[1] Although Erica Rael apparently turned eighteen years old in 2005 (Compl. at ¶ 5), no motion has been brought for Erica to pursue this case on her own behalf.

[2] Plaintiff disputes only one of Defendants' Statement of Material Facts, No. 7, which reads: "Nasca asked Rael to raise her arms and he patted her down on her hips and the outside of her thighs down to her ankles. Nasca did not touch any other part of Rael's body." (Mem. Supp. Pls.' Resp. Mot. Summ. J. at pt. II; Mem. Supp. Defs.' Mot. Summ. J. at 6.) In its stead, Plaintiff offers the following:

> Defendant Nasca asked Erica Rael to raise her arms and he patted her down on her hips and the side of her thighs down to her ankles and he felt her back of the area of her pants. Erica Rael was wearing tight spandex stretch pants. Ella Lujan was available to conduct a private search.

(Mem. Supp. Pls.' Resp. Mot. Summ. J. at pt. II.) For the purposes of this Motion only, Defendants stipulate that Plaintiff's version of these facts is true. (Reply Supp. Defs' Mot. Summ. J. at 5.)

asked another student to retrieve her backpack and went on to her first period class. About ten minutes later, Defendant Vincent Nasca, head of security at the high school, got Erica out of class and escorted her to the vice principal's office.

At the office, Erica removed her coat, as requested by Officer Nasca. Officer Nasca then proceeded to search Erica, who was wearing tight spandex stretch pants: he had her raise her arms and he patted her down on her hips and the side of her thighs down to her ankles; he also felt the back area of her pants. Officer Nasca then asked the school secretary, Ella Lujan, who was available and could have conducted the search he just had completed, to continue by having Erica lift her bra. After Officer Nasca left the room, however, Ms. Lujan did not search Erica's bra, but did have her lift her arms and also searched Erica's shoes and socks. No drugs or drug paraphernalia were found on Erica, as she had handed off her pipe and marijuana to someone else when she ran from behind the gym.

In the meantime, Principal Michael Chavez arrived and he and Officer Nasca questioned Erica about the whereabouts of the marijuana. Officer Nasca called Erica's mother at her work and then asked Erica to rub her fingers together. At that point Erica knew she was caught because they could smell the marijuana. Principal Chavez escorted Erica to the bathroom and asked her to look in the mirror, saying, "Look at yourself in the mirror, you are high aren't you."

Principal Chavez subsequently took Erica to his office, where she sat across the table from Juan Grant. When Juan requested to go to the bathroom, Mr. Padilla, a security guard, was called to escort him. Juan ran off on his way to the bathroom.

While Principal Chavez was on the phone calling Juan's father, Erica became increasingly annoyed and got up to leave. Mr. Padilla came into the room and asked Erica to sit down, but she

refused to do so.  Principal Chavez then grabbed Erica's arm and pushed her back a little to seat her in the chair.  Erica got up again and again Principal Chavez pushed her into the chair, this time by her shoulders.  The chair tipped back and Erica hit her chin on the table, but did not bruise or cut it.  During this encounter she was screaming and resisting.  Principal Chavez then allowed Erica to go to the outer office to wait for her mother to arrive.

In the meantime, security guards retrieved and searched Erica's backpack, finding a foil marijuana pipe.  Erica was suspended from school, but she believes the suspension was proper because she violated school policy.  She also feels that she has learned from this experience.  Lana Landrum, Ph.D., Plaintiff's expert witness, found that Erica does not appear to be experiencing any lasting negative emotional effects.

In her Answer to Motion for Summary Judgment, Plaintiff concedes that the New Mexico Tort Claims Act does not waive government immunity under the circumstances of her case and acknowledges that the causes of action for Assault and Battery, Prima Facie Tort, Intentional Infliction of Emotional Distress, Negligence, Failure to Train and Supervise, and False Imprisonment should be dismissed.  The Court agrees and these state law claims will be dismissed.  The Court does not agree with Plaintiff, however, that Defendants Nasca and Chavez are not entitled to qualified immunity.

The doctrine of qualified immunity protects government officials from individual liability under 42 U.S.C. § 1983 for actions taken while performing discretionary functions, unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When raised in a motion for summary judgment, this defense requires a plaintiff to meet a two-part test:  "First, the plaintiff must show the defendant's conduct violated a constitutional or statutory right; second, the plaintiff must show the right the defendant's conduct violated was clearly established such that a reasonable person in the defendant's position would have known the conduct violated the right." *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 593 (10th Cir. 1999)(quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997)).

The Court's first task, then, is "to determine whether the plaintiff has alleged any constitutional or statutory violation." *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 516 (10th Cir. 1998)(citing *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).  The Court finds that Plaintiff has not.

Plaintiff first charges that Officer Nasca violated Erica's Fourth Amendment rights.  It has long been established law that the Fourth Amendment's prohibition of unreasonable searches and seizures applies to searches conducted by public school officials. *See, e.g., New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985).  Given the "substantial interest of teachers and administrators in maintaining discipline in the classroom and on school grounds," however, the Supreme Court has "recognized that maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures." *Id.* at 339-40 (citing *Goss v. Lopez*, 419 U.S. 565, 582-83 (1975); *Ingraham v. Wright*, 430 U.S. 651, 680-82 (1977)).  Thus,

> accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not

5

>require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law.

*Id.* at 341. "Rather, the legality of a search of a student should depend simply on the reasonableness under all of the circumstances, of the search" *id.*, and involves a twofold inquiry:

>first, [the Court] must consider whether the action was justified at its inception; second, [the Court] must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place. Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*Id.* at 341-42 (citations, omissions, and footnotes omitted).

There is no doubt that there were reasonable grounds for Officer Nasca to suspect that a search of Erica would turn up evidence that she was violating the law and the rules of the school: a teacher caught Erica and her boyfriend smoking marijuana behind the school gymnasium. The only issue then, is whether the search was permissible in its scope, that is, whether the search conducted by Officer Nasca was reasonably related to the objectives of finding marijuana or drug paraphernalia and was not excessively intrusive in light of Erica's age, sex, and the nature of her infraction. The Court finds that the search was permissible in its scope and that Officer Nasca did not violate Erica's Fourth Amendment rights.

Plaintiff contends that the actions of Officer Nasca were not reasonable or reasonably related to the circumstances. With no citation to authority, she argues that Officer Nasca should not have touched Erica because Ms. Lujan was available to conduct the search. Plaintiff additionally maintains that there was no need at all to search Erica because she was wearing tight spandex pants and

anything in her pockets or pants would have been visible and that the search of the back of her pants was especially egregious and unreasonable.

There can be no doubt that school officials, in their efforts to maintain discipline and order and to secure the safety and welfare of their students, have a compelling interest in searching for drug contraband.  *See, e.g., Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 623 n.58 (5th Cir. 2004); *Brousseau v. Town of Westerly*, 11 F. Supp. 2d 177, 182 (D.R.I. 1998).  There also is no doubt that the Fourth Amendment does not require use of "the least intrusive or less intrusive means to effectuate a search but instead permits a range of objectively reasonable conduct."  *Shade v. City of Farmington*, 309 F.3d 1054, 1061 (8th Cir. 2002)(citing *Schultz v. Long*, 44 F.3d 643, 649 (8th Cir. 1995)).  Therefore, although the Court is sympathetic to the fact that Erica might have been embarrassed while Officer Nasca patted her down on her hips and her thighs to her ankles and feeling the back of her pants, this search was by no means unreasonable under the circumstances: that she was fifteen years old,[3] that it was conducted by the male head of school security,[4] and that its purpose was to discover illegal drugs.[5]

---

[3] As the court noted in *Cornfield v. Consol. High Sch. Dist.*, the age of a child subjected to a search is relevant in evaluating the reasonableness of a search: while "the likelihood that a child is engaging in independent criminal activity will tend to increase with the age of the child . . . the potential for a search to cause embarrassment and humiliation increases as children grow older."  991 F.2d 1316, 1321 & n.1 (7th Cir. 1993).

[4] Although the *Cornfield* court noted that "[a] nude search of a student by an administrator or teacher of the opposite sex would obviously violate [the *T.L.O.*] standard, 991 F.2d at 1320, Officer Nasca did not strip search Erica.

[5] Erica apparently also was a special education student with an unspecified disability.  This fact, whether considered alone or in conjunction with the other circumstances underlying the search, does not alter the Court's conclusion that Officer Nasca did not violate her Fourth Amendment rights.

Plaintiff also claims that Principal Chavez violated Erica's Fourteenth Amendment substantive due process rights by needlessly attempting to restrain her when she wanted to leave his office by twice pushing her down, causing her some unspecified injury.  As the Supreme Court explained in *County of Sacramento*, the core concept of due process is protection against arbitrary action, and "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" 523 U.S. at 845, 846 (quoting *Collins v. Harker Heights*, 503 U.S. 115,129 (1992)).  Thus, the Court has "spoken of the cognizable level of executive abuse of power as that which shocks the conscience."  *Id.* at 846.  It has described such conduct as violating the "decencies of civilized conduct," *id.* (quoting *Rochin v. California*, 342 U.S. 165, 172-72 (1952)), as "so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency," *id.* at 847 (quoting parenthetically *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)), and as interfering "with rights 'implicit in the concept of ordered liberty,'" *id.* (quoting parenthetically *Untied States v. Salerno*, 481 U.S. 739, 746 (1987)(quoting *Rochin*, 342 U.S. at 172)).

Without condoning Principal Chavez's actions in grabbing and pushing Erica back into her chair, resulting in her hitting her chin on the table, his actions in no way shock the conscience of the Court.  *Cf., e.g., Garcia v. Miera*, 817 F.2d 650 (10th Cir. 1987)(school corporal punishment rises to substantive due process violation when force applied causes injury so severe, so disproportionate to need presented, so inspired by malice or sadism, rather than merely careless or unwise excess of zeal, that it amounts to brutal and inhumane abuse of official power literally shocking to the conscience; in first beating, nine-year-old girl held up by ankles, hit several times with split board of substantial size on front of legs until they bled, causing permanent scar; second beating caused buttocks to be bright red with crease across both, pain for three weeks, examining doctor stated had

not seen bruises like that from routine spankings, nurse stated would have reported as child abuse if child had received injury at home; allegations of both beatings sufficiently stated substantive due process violations); *Abeyta v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253 (10th Cir. 1996)(substantive due process claim must be something more than ordinary tort to be actionable under § 1983; while psychological harassment might be severe enough to constitute substantive due process violation, teacher calling twelve-year-old female student prostitute in front of class and classmates taunting her over one-and-one-half months does not reach high level of brutal and inhumane abuse of official power literally shocking conscience, whether done with indifference or deliberate intent to cause psychological harm).

Defendants Nasca and Chavez did not violate Erica's constitutional rights and they therefore are entitled to qualified immunity.  Furthermore, there having been no constitutional violation, Plaintiff cannot maintain this action against any of the Defendants.  *See, e.g., Cornfield*, 991 F.2d at 1328 (Easterbrook, J., concurring); *Singleton v. Bd. of Educ. USD 500*, 894 F. Supp. 386, 391 (D. Kan. 1995)).

An Order in accordance with this Memorandum Opinion shall be entered contemporaneously.

_____
SENIOR UNITED STATES DISTRICT JUDGE